# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 14, 2013

## STATE OF TENNESSEE v. LAWRENCE D. RALPH, JR.

**Appeal from the Circuit Court for Warren County**
**No. F11432     Larry B. Stanley, Jr., Judge**

---

### No. M2013-01100-CCA-R3-CD - Filed December 23, 2013

---

The Defendant, Lawrence D. Ralph, Jr., was convicted by a Warren County jury for violation of the Motor Vehicle Habitual Offenders Act; driving with a revoked license, fifth offense; reckless endangerment with a deadly weapon; reckless driving; and evading arrest.[1] The Defendant received an effective sentence of eight years in confinement. The Defendant filed a motion for a new trial, which was denied by the trial court, and subsequently filed a timely notice of appeal to this Court. After concluding that we lacked jurisdiction, we dismissed the appeal. See State v. Lawrence D. Ralph, No. M2010-00195-CCA-R3-CD, 2011 WL 766941 (Tenn. Crim. App. March 4, 2011). The Defendant then filed a petition for post-conviction relief, alleging ineffective assistance of counsel. The post-conviction court granted the Defendant a delayed appeal to appeal issues raised during trial and in his motion for new trial. In this appeal, the Defendant argues that the evidence is insufficient to sustain his conviction for reckless endangerment with a deadly weapon and that his sentence is excessive and violates double jeopardy. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Lauren Zechman-Denney, for the Defendant-Appellant, Lawrence D. Ralph, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Bradshaw, Assistant Attorney General; Lisa Zavorgiannis, District Attorney General; and Darrell Julian, Assistant District Attorney General, for the Appellee, State of Tennessee.

---

[1] The judgment reflects that the trial court merged the driving with a revoked license, fifth offense, into the conviction of the violation of the Motor Vehicle Habitual Offenders Act.

**OPINION**

On November 2, 2007, the Defendant was arrested following a high-speed police chase in McMinnville, Tennessee. The Defendant was indicted for violating the Motor Vehicle Habitual Offenders Act; driving with a revoked license, fifth offense; reckless endangerment with a deadly weapon; reckless driving; and evading arrest. Following a jury trial on July 11, 2009, the Defendant was convicted on all five counts.

**Trial.** Deputy Brad Myers of the Warren County Sheriff's Office testified that at the time of the offense, he was a patrolman with the McMinnville City Police Department. He stated that on November 2, 2007, the day of the offense, he was standing outside of the police department at approximately 2:30 p.m. with several other officers in between a shift change when he heard "what sounded to be a motorcycle or some sort of vehicle revving its engine." Shortly thereafter, Deputy Myers observed a "suspect on a motorcycle driving pretty reckless" down High Street, which runs parallel to the parking lot at the police department. He recalled that the motorcycle's front tire came off the ground as the driver, later determined to be the Defendant, shifted gears and opined that the driver was driving "well [in] excess of [the] 30 mile an hour [speed limit]." Deputy Myers got in his patrol car, began pursuing the Defendant, and initiated his blue lights. He pulled behind the Defendant at a stop sign at the intersection of South Chancery and High Street, at which point Deputy Myers "got a good look at [the Defendant]." He described the Defendant to dispatch as a white male with a tattoo on his left hand and recalled that the Defendant was wearing a grey shirt. He stated that the Defendant turned around and looked at Deputy Myers while at the stop sign, but "rather than stopping or slowing down, he did the complete opposite." Deputy Myers testified that the Defendant "accelerated to a high rate of speed" and began passing cars dangerously in heavy traffic. The Defendant continued across Frank G. Clement Bridge, a two-lane bridge where passing is illegal. The Defendant passed several cars "in an area that's three foot wide," and then ran a red light. Deputy Myers recalled that several times during the pursuit, the Defendant passed cars on the right-hand shoulder of the road when he was unable to pass on the left-hand side due to oncoming traffic.

Deputy Myers testified that his supervisors advised him to terminate the pursuit of the Defendant because of safety concerns due to the heavy traffic at that time of day and the fact that a nearby high school was about to dismiss students for the day. Deputy Myers began to slow his patrol car to terminate his pursuit when the Defendant turned onto Liberty Lane and his motorcycle "slow[ed] down almost to a stop." Deputy Myers informed dispatch of the status of the pursuit and followed the Defendant down Liberty Lane. The Defendant pulled the motorcycle, which had stopped working, into the grass and was attempting to restart it when Deputy Myers arrived. Deputy Myers got out of his car and approached the Defendant at which point the Defendant threw off his helmet and ran from Deputy Myers. Deputy

-2-

Myers stated that the two were about five feet apart and that they made eye contact with one another, but he was unable to stop the Defendant. Deputy Myers recalled that he asked the Defendant to stop three or four times to no avail. The Defendant ran across Liberty Lane, jumped off of a six-foot block wall in the backyard of a home, and ran into a wooded area. At that point, Deputy Mike Vann arrived on the scene and the two officers located the Defendant hiding in some underbrush in the woods. Deputy Myers also found the Defendant's grey button-up shirt, which he had been wearing during the chase, on the ground a few feet away from the Defendant. Deputy Myers identified the Defendant in court as the man he pursued and arrested that day.

On cross examination, Deputy Myers stated that he knew of the Defendant and his family prior to the arrest because "[t]his is McMinnville," but stated that he had never personally dealt with the Defendant prior to that day. He acknowledged that there was no video of the pursuit of the Defendant, but explained that the in-car video camera had not been activated in his patrol car at the time of the pursuit because the officers were in between shift change at the time. On redirect, he reiterated that he did not know the Defendant personally, and did not know the identity of the Defendant until after his arrest.

Jerry Steakley testified that on the day of the offense, he was passed "on the wrong side of the road" by a man on a motorcycle. He explained that he was driving his suburban "in the right-hand lane and just all of a sudden [he] heard a noise and . . . [he] looked to [his] left and didn't see anything in [his] mirror and when [he] looked back to [his] right there was a motorcycle passing [him]" on the shoulder of the road. He stated that the event scared him because the motorcyclist was so close that he thought if he moved his steering wheel at all it would cause a wreck. After the motorcycle passed Mr. Steakley, he observed it pass several other vehicles on the right-hand shoulder of the road. He then heard the sirens and saw the blue lights of a patrol car and pulled his car over to the side of the road to allow the officer to pursue the motorcyclist. On cross examination, Mr. Steakley was asked whether he felt in danger of serious bodily injury during the incident to which Mr. Steakley replied "I wasn't considering myself but I was considering whoever passed me on the motorcycle."

Based upon the above testimony, the jury convicted the Defendant on all five counts. A sentencing hearing was held on September 9, 2009. The court sentenced the Defendant as a Range II, multiple offender to four years in confinement for violation of the Motor Vehicle Habitual Offenders Act, to be served consecutive to four years in confinement for reckless endangerment with a deadly weapon and concurrent to six months in the county jail for reckless driving and eleven months and twenty-nine days in county jail for evading arrest for a total effective sentence of eight years. The court set aside the verdict and dismissed the count for driving on a revoked license conditioned upon the survival of the Habitual Traffic Offender conviction on appeal, noting on the judgment form that "[d]ouble jeopardy

precludes the simultaneous conviction of Habitual Traffic Offender and Driving on a Revoked Driver's License."

On September 29, 2009, the Defendant filed a motion for a new trial, which the trial court denied following a hearing on January 13, 2010. The Defendant then filed a timely notice of appeal to this Court, which we subsequently dismissed after concluding that we lacked jurisdiction because the Defendant failed to include the correct judgment sheets in the record. See Lawrence D. Ralph, 2011 WL 766941. On May 26, 2011, the Defendant filed a timely petition for post-conviction relief. Following a hearing on February 27, 2013, the trial court granted the Defendant a delayed appeal. This timely appeal followed.

## ANALYSIS

On appeal, the Defendant argues that the State failed to present sufficient evidence to sustain his conviction for reckless endangerment with a deadly weapon and that his sentence is excessive and violates double jeopardy. The State responds that the evidence to convict the Defendant is "overwhelming" and more than sufficient to sustain the Defendant's conviction. The State also asserts that the trial court did not abuse its discretion in sentencing the Defendant to an effective term of eight years because it properly considered the principles and purposes of the Sentencing Act. The State further asserts that the Defendant's sentence does not violate double jeopardy. Upon review, we agree with the State.

**I. Sufficiency of the Evidence.** The Defendant first argues that the evidence is insufficient to sustain his conviction for reckless endangerment with a deadly weapon. The Defendant asserts that the State failed to prove that Mr. Steakley was in fear for his life or that he believed he was in personal danger, and therefore, the State failed to prove all of the elements of the offense beyond a reasonable doubt.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this Court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews,

805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)).

The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this Court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). This Court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659. A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

Tennessee Code Annotated section 39-13-103(a) provides that a person commits reckless endangerment when he "recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury."[2] The Tennessee Supreme Court has held that "for the threat of death or serious bodily injury to be 'imminent,' the person must be placed in a reasonable probability of danger as opposed to a mere possibility of danger." State v. Payne, 7 S.W.3d 25, 28 (Tenn. 1999) (citing State v. Fox, 947 S.W.2d 865, 866 (Tenn. Crim. App. 1996)). Reckless endangerment may be committed against the public at large if the defendant places members of the public within the "zone of danger." State v. Marques Lanier Bonds, No. W2005-02267-CCA-R3-CD, 2006 WL 2663753, at *10 (Tenn. Crim. App. Sept. 15, 2006) (citing Payne, 7 S.W.3d at 28-29). The term "zone of danger" refers to "that area in which a reasonable probability exists that the defendant's conduct would place others in imminent danger of death or serious bodily injury if others were present in that zone or area." Payne, 7 S.W.3d at 28. Although the State need not identify those persons within the zone of danger by name, the State "must show that a person or class of persons were in an area in which a reasonable probability of danger existed." Id.

In the case sub judice, the evidence presented at trial established that the Defendant drove past the McMinnville City Police Department at a high rate of speed and in such a manner that the front wheel of his motorcycle rose off of the ground six to ten inches.

_____

[2] When committed with a deadly weapon, reckless endangerment is a Class E felony. T.C.A. § 19-13-103(b)(2). A deadly weapon is defined by statute and includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." T.C.A. §39-13-106(a)(5)(B). This Court has held that a motor vehicle can constitute a deadly weapon. See State v. Tate, 912 S.W.2d 785, 787-88 (Tenn. Crim. App. 1995).

Deputy Myers testified that he began pursuing the Defendant and initiated his blue lights to effectuate a stop, but the Defendant "accelerated to a high rate of speed" and began passing cars in a dangerous fashion. The Defendant passed vehicles on a narrow, two-lane bridge and ran a red light in an attempt to evade Deputy Myers's pursuit. Deputy Myers was eventually told to terminate the pursuit due to safety concerns because of the heavy traffic at that time of day. Additionally, Mr. Steakley testified that the Defendant passed several vehicles, including his own, on the right-hand shoulder of the road. He also testified that the Defendant drove so close to his car that he feared any movement of his steering wheel would cause a wreck. Reviewing this evidence in the light most favorable to the prosecution, we conclude that a rationale juror could have found the Defendant guilty of reckless endangerment with a deadly weapon beyond a reasonable doubt.

The Defendant places heavy emphasis on the fact that Mr. Steakley testified that he was more concerned for the motorcyclist than for himself, and maintains that because Mr. Steakley did not believe he was in personal danger, the State failed to meet its burden of proof. We disagree. The Defendant was indicted and convicted for placing "society in imminent danger of death or serious bodily injury."[3] In Payne, the Tennessee Supreme Court reasoned that the State could establish that a member of the public was in the zone of danger "by showing that at the time of the chase another motorist was driving on the street or that an individual was walking down the sidewalk." Payne, 7 S.W.3d at 29. There is no requirement, as the Defendant argues, that the State prove that the victim or victims be aware of the danger or be placed in fear for their own safety. See State v. Larry Michael Watson, No. E2000-01923-CCA-R3-CD, 2001 WL 1035173, at *3 (Tenn. Crim. App. Sept. 11, 2001) (noting that felony reckless endangerment focuses "upon the conduct that causes a risk of harm, not the harm itself . . . [and] [t]hose within the zone of danger need not even be aware that the threat exists") (quoting State v. Michael P. Healy, No. W1999-01510-CCA-R3-CD, 2001 WL 721077, at *3 (Tenn. Crim. App. June 26, 2001)). Regardless of Mr. Steakley's concerns for his own safety as compared to that of the motorcyclist, his testimony establishes that he and others were in the zone of danger created by the Defendant's conduct. Accordingly, the State met its burden of proof and the Defendant is not entitled to relief on this issue.

**II. Sentencing.** The Defendant next argues that his sentence is excessive. He maintains that a sentence of eight years for driving offenses that did not result in any type of

---

[3] In Payne, the Tennessee Supreme Court held that the term "public at large" may be used in an indictment for reckless endangerment to designate a class of persons occupying the "zone of danger." 7 S.W.3d at 28. We see no distinction between the terms "public at large" as used in Payne and "society" as used in the indictment in the present case.

personal or property damage or involve drugs or alcohol does not comport with the principles and purposes of the Sentencing Act.

We note that the 2005 amendments to the sentencing act "served to increase the discretionary authority of trial courts in sentencing." State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). In light of this broader discretion, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." Id. at 706. Moreover, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Id. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id. Therefore, this court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707.

Pursuant to the 2005 amendments to the sentencing act, a trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The defendant has the burden of showing the impropriety of the sentence on appeal. Id. § 40-35-401(d), Sentencing Comm'n Comments. In determining the proper sentence, the trial court must consider the defendant's potential for rehabilitation or treatment. Id. §§ 40-35-102, -103. In addition, the court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. §§ 40-35-103(2), (4).

At the sentencing hearing in the present case, the trial court made the following findings and conclusions:

> Having decided that the Defendant is a range two offender on each of the felony charges[, the violation of the Motor Vehicle Habitual Offenders Act and reckless endangerment with a deadly weapon], the sentence is between two (2) and four (4) years. Having considered the two (2) enhancing factors that the [D]efendant's previous criminal history or criminal convictions are substantial and that the [D]efendant has failed to comply with the conditions of the sentence involving release into the community, I have considered those two (2) and give those a great deal of weight. The mitigating factors [that the Defendant was serving a seventeen (17) year prison sentence on another case and that the Defendant obtained his GED and completed the design for living program while previously incarcerated] I don't find to be very persuasive.

Based on this reasoning, the court sentenced the Defendant to the maximum sentence for each offense. Regarding whether the sentences should be served concurrently or consecutively, the court considered the statutory factors, found that the Defendant is "an offender whose criminal record and criminal activity is extensive," and concluded the that some of the offenses should run consecutively. Accordingly, the court ordered that the two felony offenses be served consecutive to one another and concurrent to the misdemeanor offenses of reckless driving and evading arrest for a total effective sentence of eight years in confinement.

Based on this record, it is clear that the trial court followed the proper procedure for determining the Defendant's sentence. The court determined the correct sentencing range to be applied to each sentence, considered the applicable enhancement and mitigating factors, and sentenced the Defendant accordingly. See T.C.A. § 40-35-210. Additionally, the court considered the statutory factors set out in Tennessee Code Annotated section 40-35-115 to determine whether the Defendant's multiple sentences should run consecutively or concurrently. Having found that the Defendant has an extensive criminal history, the trial court determined that consecutive sentencing was appropriate. See State v. Adams, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997) ("Extensive criminal history alone will support consecutive sentencing.") (citing State v. Chrisman, 885 S.W.2d 834, 839 (Tenn. Crim. App. 1994)). In addressing this issue in his brief, the Defendant does not assert any specific ground upon which the trial court abused its discretion. For example, the Defendant does not challenge his status as a Range II offender or the use of certain enhancement factors. Likewise, he does not assert that the trial court improperly applied the statutory factors to determine whether consecutive sentencing should apply. Instead, without citing to any authority in support, the Defendant broadly asserts that an eight-year sentence for driving

offenses that did not involve personal or property damage or involve drugs or alcohol does not comport with the principles and purposes of the Sentencing Act. We are not persuaded by this argument. As noted above, "[i]t is the defendant who bears the burden of showing the sentence is improper." State v. Goodwin, 143 S.W.3d 771, 783 (Tenn. 2004) (citing Ashby, 823 S.W.2d at 169 (internal quotation marks removed)). Because the record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a sentence of confinement, the Defendant has failed "to either establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded sentences which reflect a proper application of the purposes and principles of our statutory scheme." See State v. Caudle, 388 S.W.3d 273, 280 (Tenn. 2012). The Defendant is not entitled to relief.

**III. Double Jeopardy.** Finally, the Defendant argues that counts three and four, reckless endangerment with a deadly weapon and reckless driving, should have been merged into a single conviction based upon double jeopardy concerns.[4] The Defendant maintains that the offenses arose from one continuous course of action and the crimes charged constitute the "same offense" for purposes of double jeopardy.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." Likewise, the Tennessee Constitution also protects against double jeopardy convictions, providing that "no person shall, for the same offence, be twice put in jeopardy of life or limb." Tenn. Const. art. I, § 10. "Whether multiple convictions violate double jeopardy is a mixed question of law and fact, which we review de novo without any presumption of correctness." State v. Watkins, 362 S.W.3d 530 (Tenn. 2012) (citing State v. Thompson, 285 S.W.3d 840, 846 (Tenn. 2009)). In Watkins, the Tennessee Supreme Court abandoned the test set forth in State v. Denton, 938 S.W.2d 373 (Tenn. 1996), and adopted the test set out in Blockburger v. United States, 284 U.S. 299 (1932) as the proper test for determining whether multiple convictions under difference statutes violate double jeopardy. Watkins, 362 S.W.3d at 556. The Tennessee Supreme Court explained the two-step Blockburger test as follows:

> The first step of the Blockburger test is the threshold question of whether the convictions arise form the same act or transaction. This threshold question should be answered by reference to the charging instrument and the relevant statutory provisions. . . . If the convictions do not arise from the same act or transaction, there cannot be a violation of the double jeopardy protection

---

[4] The Defendant raised this issue within the context of excessive sentencing; however, we perceive it to be a separate issue warranting its own analysis, and therefore, address it separately.

against multiple punishment. Thus, a threshold determination that multiple convictions do not arise from the same act or transaction ends the inquiry and obviates the need for courts to further analyze double jeopardy claims.

. . . .

If the threshold is surpassed, meaning the convictions arise from the same act or transaction, the second step of the Blockburger test requires courts to examine the statutory elements of the offenses. If the elements of the offenses are the same, or one offense is a lesser included of the other, then we will presume that multiple convictions violate double jeopardy. However, if each offense includes an element that the other does not, the statutes do no define the "same offense" for double jeopardy purposes, and we will presume that the Legislature intended to permit multiple punishments.

Watkins, 362 S.W.3d at 557.

As directed by Watkins, we begin our analysis with the threshold Blockburger inquiry of whether the Defendant's convictions for reckless endangerment with a deadly weapon and reckless driving arose from the same act or transaction. After reviewing the record, including the charging instruments and relevant statutory provisions, we conclude that the Defendant's double jeopardy claim survives this initial inquiry as both convictions arise from a single, continuous act: his attempt to evade Deputy Myers.[5] Because the claim survives the threshold Blockburger inquiry, we must now consider "whether the General Assembly intended to allow the offenses to be punished separately." State v. Cross, 362 S.W.3d 512, 520 (Tenn. 2012) (citing Watkins, 362 S.W.3d at 557-58). This determination is best made "by examining the statutory elements of the offenses in the abstract, rather than the particular facts of the case." Cross, 362 S.W.3d at 520 (citing Watkins, 362 S.W.3d at 543-44).

In defining the crime of Class B misdemeanor reckless driving, the General Assembly has provided that "[a]ny person who drives any vehicle in willful or wanton disregard for the safety of persons or property commits reckless driving." T.C.A. § 55-40-205(a). In defining the crime of reckless endangerment, the General Assembly has provided that "[a] person

---

[5] We note that there was testimony that the Defendant drove his motorcycle in a manner that caused the front tire of the bike to raise off of the ground, which is a basis for reckless driving under Tennessee Code Annotated section 55-10-205(b). However, the charging instrument for this offense charged that the Defendant "did drive a motor vehicle upon a public highway . . . with willful or wanton disregard for the safety of persons or property," which mirrors the language in Tennessee Code Annotated section 55-10-205(a). Thus, we conclude that the Defendant's conviction on this count, like his conviction for reckless endangerment with a deadly weapon, arose from his attempts to evade Deputy Myers.

commits an offense who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." T.C.A. § 39-13-103(a). Additionally, when committed with a deadly weapon, reckless endangerment is a Class E felony. T.C.A. § 39-13-103(b)(2).

The Defendant maintains that the elements in these two statutes mirror one another and that reckless driving is "a prerequisite to constituting the offense of reckless endangerment with a deadly weapon in the matter at hand;" thus, according to the Defendant, these two offenses constitute the "same offense" for purposes of double jeopardy. We disagree. For one, a panel of this Court previously determined that reckless driving is not a lesser included offense of felony reckless endangerment. See State v. Kerry D. Hewson, No. M2004-02117-CCA-R3-CD, 2005 WL 2438386, at *2-3 (Tenn. Crim. App. Sept. 28, 2005). As relevant for our analysis, the Kerry D. Hewson court reasoned:

> Reckless driving, though a lesser offense than felony reckless endangerment, requires the use of a vehicle. Although a motor vehicle is a deadly weapon, see, e.g., State v. Tate, 912 S.W.2d 785, 787-88 (Tenn. Crim. App. 1995), and although reckless endangerment is elevated to a felony when a deadly weapon is used, felony reckless endangerment does not require the use of a vehicle. As such, the lesser offense contains an element not contained in the greater offense.

Id. at *2. Additionally, reckless endangerment contains several elements not contained in reckless driving. First, reckless endangerment requires proof that a person or class of persons was placed in "imminent danger of death or serious bodily injury." See T.C.A. § 39-13-103(a). Reckless driving, however, only requires proof that the defendant operated a vehicle "in willful or wanton disregard for the safety of persons or property." See T.C.A. § 55-40-205(a). Moreover, felony reckless endangerment requires proof that the reckless endangerment was committed with a deadly weapon. See T.C.A. § 39-13-103(b)(2). Reckless driving, on the other hand, does not require the use of a deadly weapon. Thus, we conclude that convictions for Class B misdemeanor reckless driving and Class E felony reckless endangerment do not constitute the same offense nor is one a lesser included offense of the other for purposes of double jeopardy. Therefore, the Defendant is not entitled to relief.

## CONCLUSION

Based upon the foregoing authorities and analysis, we affirm the judgments of the trial court.

_____

CAMILLE R. McMULLEN, JUDGE